# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| LAURA CAMPBELL, ET AL. | |
|---|---|
| VERSUS | CIVIL ACTION |
| | NO. 17-1261-JWD-EWD |
| JOHN BEL EDWARDS, ET AL. | |

## RULING AND ORDER

This matter comes before the Court on the *Motion to Alter or Amend Judgment* (Doc. 35) filed by Defendant Jeff Landry, in his official capacity as Attorney General of Louisiana (the "Attorney General"). The motion is unopposed. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Attorney General's motion is denied.

### I. Relevant Factual and Procedural Background

In this case, Laura Campbell and other *pro se* plaintiffs filed a class action seeking to "declar[e] the current method of judicial elections in St. John the Baptist Parish unconstitutional" and to enjoin "judicial elections in the parish, until such time as remedial legislation, providing for at-large election of judges, can be passed." (Doc. 1 at 1.) Plaintiffs alleged that "The 40th Judicial District, in and for the Parish of St. John the Baptist, was subject to re-districting/sub-districting as a result of the ruling in *Clark v. Roemer*, 777 F.2d 445" which "was decided on or about June 12,1990." (Doc. 1 at 6.) Plaintiffs further claim: "Shortly after the ruling in *Clark v. Roemer* occurred, an at-large judicial election took place and resulted in the election of a Black/African American female to the bench, the Honorable Madeline Jasmine." (*Id.*) But, Plaintiffs state: "Despite the result of the foregoing parish-wide judicial election, St. John the

Baptist Parish was divided into three subdistricts—Division A, Division B, and Division C—with only those voters domiciled and residing in each district able to cast a ballot for candidates running for judgeships within each division/subdistrict." (*Id.*) District A was a majority African-American district, but "Divisions B and C were comprised of purportedly contiguous and compact areas where White voters constituted a majority." (Doc. 1 at 7.) According to Plaintiffs, "[t]he problem of vote dilution currently exists by election of state judges by subdistrict, rather than at-large, in St. John the Baptist Parish, because minorities, such as Pro Se Plaintiffs, who reside outside of Divisions B and C, are precluded from casting a vote for candidates running in these subdistricts." (*Id.*)

>Plaintiffs sought the following relief:
>
>Under the totality of the circumstances, St. John the Baptist Parish's method of electing members for the 40th Judicial District by subdistrict, rather than at-large, has the purpose and effect of denying a substantial percentage of registered Black voters the opportunity to participate in the political process and to elect representatives of their choice, in violation of Section 2 of the Voting Rights Act, and the constitutional guarantees of the Fourteenth and Fifteen Amendments.
>
>. . . Unless enjoined by order of this Court, Defendants will continue to act in violation Of Section 2 of the Voting Rights Act and the constitutional guarantees of the Fourteenth and Fifteen Amendments by administering, implementing, and conducting future elections for the 40th Judicial District using a method of election, which, history shows, was never needed, and, which, if allowed to continue, violates the equal protection and voting rights of Pro Se Plaintiffs and other Black/African American residents situated similarly to them in St. John the Baptist Parish.

(Doc. 1 at 8.) Plaintiffs also prayed for the following: (1) a declaration that the "Defendants' method of electing members for the 40th Judicial District by subdistrict violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments to the U.S. Constitution"; (2) a declaration that the method of electing judges to this district "has the result of denying or abridging the right to vote on account of race or color" in violation of the same

laws; (3) an injunction prohibiting defendants from enforcing or conducting "any future elections" to that district "under the current subdistrict method of election"; (4) an order "[s]etting an immediate and reasonable deadline" for the State "to enact and adopt an at-large method of election" for the district, or, alternatively, an order for "the implementation of an election system" for the district "that complies" with the above laws; and (5) an order retaining jurisdiction over the case and requiring the parish "to obtain preclearance" from the Court or U.S. Department of Justice for all future changes in voting law affecting the district, until there is compliance with the above laws. (Doc. 1 at 8–9.)

After suit was filed, Plaintiff Deborah Weber moved to dismiss herself from the case. (Doc. 5.) On December 6, 2017 that motion was granted.

On the same day, the Attorney General filed an answer. (Doc. 6.) There, he asserted a few affirmative defenses and then addressed the allegations in the Complaint. (*See Defendant Jeff Landry's Answer to the Complaint*, Fourth Defense, Doc. 6 ¶¶ 1–39.) The Attorney General then set forth a number of separate paragraphs, wherein he stated that the "election of judges from subdistricts is inherently unfair" for a number of reasons and that the historical and racial reasons for utilizing this method of election "have changed" such that "election subdistricts for judicial elections are no longer warranted." (*Id.* ¶¶ 40–44.) The Attorney General prayed for, among other things, the following:

> III. The court reopen *Clark v. Roemer* and order joinder of the parties thereto to the extent protection of their interests may be impaired by a ruling herein; and
>
> III. The court enter judgment declaring that subdistricts for the election of district court judges are no longer legally viable and ought to be dissolved and that the method of electing district judges district wide should be restored and reinstated beginning with the first regular primary election following a final decision in the case;

(*Id.* at 10.)

Subsequently, other plaintiffs moved to dismiss themselves. (Docs. 11, 14.) The Court granted these requests. (Docs. 16, 17.)

Then, on January 8, 2018, the parties filed a *Joint Motion to Retrieve Case Record in Clark v. Roemer*. (Doc. 22.) The parties explained:

> The method of electing judges and the formation of election sub-districts in the 40th Judicial District were established by the Court in the matter of *Clark v. Roemer*, No. 3:86-cv-435-A in several rulings, including *Findings of Fact and Conclusions of Law* dated August 15, 1988 with attachments and as amended by Minute Entry of August 31, 1988; *Clark v. Roemer*, published decisions at 725 F.Supp. 285, 304 (M.D. La. 1988), 777 F.Supp. 445, 461, 469 (M.D. La. 1990), and 777 F.Supp. 471, 480-481 (M.D. La. 1991); Judgment dated August 30, 1991 with Attachments A and B; and Consent Decree dated February 19, 1992, all of which are believed to be contained in the case record.

(*Id.* at 1–2.) The parties represented that the record was believed to be located in the Records Center Archives, National Archives and Records in Fort Worth, Texas, and they asked for the Court to direct the Clerk of Court to retrieve them. (*Id.* at 2.) The motion was granted. (Doc. 23.)

Subsequently, more plaintiffs moved to dismiss themselves, without opposition. (Doc. 27.) The Court granted this motion. (Doc. 28.)

Following the answer by Defendant Governor Edwards (Doc. 31), on February 20, 2018, the remaining Plaintiffs filed a motion to dismiss themselves (Doc. 33). In their memorandum in support, Plaintiffs represented:

> The remaining Plaintiffs, who also instituted suit pro se now seek to dismiss their claims. Plaintiffs have collectively learned since instituting suit that the specific relief they seek, as residents of St. John the Baptist Parish, can be obtained, with the support of their representatives in the state legislature, via legislative act, in a manner that is less time consuming and more cost-efficient. Accordingly, Plaintiffs seek dismissal of their claims brought herein with prejudice.

(Doc. 33-1 at 1.) The following day, on February 21, 2018, the Court granted the Plaintiff's motion and dismissed Plaintiffs' claims with prejudice. (Doc. 34.)

## II. The Attorney General's Arguments

On March 20, 2018, the Attorney General filed the instant motion. He argues that, in his answer, he "pled a cause of action independent of the plaintiffs' and prayed for affirmative relief to declare that the current method of electing judges in the 40th Judicial District by sub district no longer legally viable[.]" (Doc. 35 at 1–2.) He further contends: "While the Attorney General did not style his affirmative plea for relief as a counterclaim, the nature of the pleading as a counterclaim with an independent prayer for affirmative relief allows the pleading to be treated as a counterclaim under Rule 8(c)(2) and (e)." (Doc. 35 at 2.) The Attorney General maintains that, to the extent the Court dismissed the counterclaims asserted in his answer, "such a dismissal would constitute a manifest error of law and fact, and the judgment should be altered or amended to allow the claims and demands of the Attorney General to go forward as a counterclaim." (*Id.*) The Attorney General "concedes that this motion is unusual both from a procedural standpoint and from the standpoint of a defendant petitioning to re-open a case where the plaintiffs have voluntarily dismissed their claims," but he relies on the state's "vital interest in how district judges are elected" and his duty to "pursue those interests." (Doc. 35-1 at 7.)

## III. Discussion

### A. Relevant Standard and Summary of Ruling

When a motion for reconsideration " 'calls into question the correctness' of the judgment," the Court considers it under Fed. R. Civ. P. 59(e). *Allen v. Envirogreen Landscape Prof'ls, Inc.*, 721 F. App'x 322, 328 (5th Cir. 2017) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) ). "Rule 59(e) motions serve 'the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.' " *Id.* (quoting *Templet*, 367 F.3d at 479). " 'Reconsideration of a judgment after its entry is an

extraordinary remedy that should be used sparingly.' " *Id.* (quoting *Templet*, 367 F.3d at 479). "Accordingly, a motion for reconsideration 'is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.' " *Id.* (quoting *Templet*, 367 F.3d at 479).

Here, the Court will deny the Attorney General's motion on two grounds. First, the Court disagrees with the Attorney General's characterization of his answer as asserting a counterclaim. Second, the instant action is no longer justiciable.

### B. The Attorney General Did Not Assert a Counterclaim

Rule 8 of the Federal Rules of Civil Procedure provides: "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2). Rule 8 further provides that "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). With respect to the differences between defenses and counterclaims, "[a] defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies; a counterclaim can be." *Reiter v. Cooper*, 507 U.S. 258, 265, 113 S. Ct. 1213, 1218 (1993).

Here, the Court has reviewed the relevant portions of the Attorney General's answer (quoted above) and finds that he did not assert a counterclaim. Moreover, the Court finds that the relief the Attorney General seeks cannot possibly be adjudged separately from the Plaintiffs' claims. At the very least, the Attorney General has not shown that the Court manifestly erred in reaching this result.

On this ground alone, the Attorney General's motion should be denied. However, the second reason for denying the Defendants' motion—the mootness of this case—is an additional

reason why justice does not demand that the Court construe the Attorney General's answer as a counterclaim.

### C. This Case Is Not Justiciable

Under Article III of the Constitution, a federal court's jurisdiction is limited to live cases or controversies. U.S. Const. art. III, § 2; *Tex. Office of Pub. Util. Counsel v. F.C.C.*, 183 F.3d 393, 413 n. 16 (5th Cir. 1999) (quoting *North Carolina v. Rice*, 404 U.S. 244, 245–46, 92 S.Ct. 402, 404 (1971)). A "live" (or "justiciable") case "must be definite and concrete, touching the legal relations of parties having adverse legal interests" and is "thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S. Ct. 461, 464 (1937); *see also, e.g., Val–Com Acquisitions Trust v. Chase Home Fin., L.L.C.*, 434 F. App'x 395, 395–96, 396 n. 2 (5th Cir. 2011) ("An actual controversy is a dispute that is 'definite and concrete, touching the legal relations of parties having adverse legal interests.' " (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000))); *Talbott Big Foot, Inc. v. Boudreaux (In re Talbott Big Foot, Inc.)*, 924 F.2d 85, 86–87 (5th Cir. 1991). If a case is moot, it must be dismissed. *See, e.g., Abraham v. Del. Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009) (per curiam).

Here, Plaintiffs have voluntarily dismissed their claims because they can obtain the relief they seek legislatively. Thus, there is no longer a case or controversy at issue. The Attorney General essentially seeks an advisory opinion based on a hypothetical dispute—one which would carry the added unfairness of requiring *pro se* parties to litigate a complex area of statutory and constitutional law. For this additional reason, the Court's order granting the Plaintiffs' motion to dismiss was not manifestly erroneous.

### D. Conclusion

Again, " '[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.' " *Allen*, 721 F. App'x at 328 (quoting *Templet*, 367 F.3d at 479). In sum, the Attorney General has failed to demonstrate entitlement to such seldom-granted relief. Consequently, the Attorney General's motion will be denied.

### IV. Order

Accordingly,

**IT IS ORDERED** that the *Motion to Alter or Amend Judgment* (Doc. 35) filed by Defendant Attorney General Jeff Landry is **DENIED**.

Signed in Baton Rouge, Louisiana, on January 23, 2019.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**